JS-6

O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

TERRY WILLIAMS-ILUNGA,          )  Case No. CV 12-08592 DDP (AJWx)
                                )
            Plaintiff,          )  **ORDER GRANTING DEFENDANTS' MOTION**
                                )  **TO DISMISS AND DENYING**
      v.                        )  **PLAINTIFF'S MOTION TO STRIKE,**
                                )  **DISQUALIFY COUNSEL, AND**
ANDREA GONZALEZ; ANA TROUB-     )  **RECONSIDER ORDER DENYING**
WISNEV; PRODUCER-WRITERS        )  **PRELIMINARY INJUNCTION**
GUILD OF AMERICA PENSION        )
PLAN; TRUSTEES OF THE           )  [Dkt. Nos. 36, 40, & 45]
PRODUCER-WRITERS GUILD OF       )
AMERICA; WRITERS GUILD OF
AMERICA WEST; WRITERS GUILD
OF AMERICA EAST,

            Defendants.
_____

     Presently before the court are Defendants Writers Guild of
America, West, Inc., and Writers Guild of America East, Inc.
(collectively "Union Defendants")'s Motion to Dismiss (Dkt. No.
36), Defendants Producer-Writers Guild of America Pension Plan
("the Plan"), Andrea Gonzalez, and Ana M. Troub-Wisnev's Motion to
Dismiss (Dkt. No. 40), and Plaintiff Terry Williams-Ilunga
(Williams)'s Motion to Strike Defendants' Coordinated Motions to
Dismiss, to Disqualify Counsel and for Reconsideration of Order
Denying Plaintiff's Request for Issuance of Preliminary Injunction

1  (Dkt. No. 45). Having considered the parties' submissions, the

2  court adopts the following order.

3  **I. BACKGROUND**

4      Williams is the wife of Ilunga Adell ("Adell"), a beneficiary

5  of Defendant Producer-Writers Guild of America Pension Plan ("the

6  Plan"), an employee pension benefit plan as defined by ERISA §3(2),

7  29 U.S.C. § 1002(2).  Adell has satisfied the conditions for

8  entitlement to pension benefits.  (FAC at 36, Exh. 4 at ¶ 7.)

9  Williams seeks benefits otherwise payable to Adell to satisfy

10 Adell's child support obligations ordered by the Los Angeles

11 Superior Court in the couple's ongoing divorce proceedings.  (Id.

12 at 38, Exh. 4 at ¶ 15.)  Under ERISA, a spouse or former spouse can

13 recover benefits in satisfaction of child support obligations if

14 the spouse possesses a valid Qualified Domestic Relations Order

15 ("QDRO"). 29 U.S.C. § 1056(d)(3)(A)-(B).

16      In July 2011, the Plan received a "Notice of Lien" and "Writ

17 of Execution" for the state court's judgment that Adell owed

18 Williams $114,592.69 in unpaid child support.  (FAC at 40, Exh. 4

19 ¶¶ 28-29; Ex Parte App. for Temporary Restraining Order, Decl. of

20 Robert A. Pool ("Pool Decl.") ¶ 11; Opp. to App. for Temporary

21 Restraining Order, Decl. of Ana Wisnev ("Wisnev Decl.") ¶ 19.)  The

22 Plan did not award Williams the benefits she was seeking, asserting

23 that she did not have a valid QDRO.  (FAC at 41, Exh. 4 ¶ 30; Pool

24 Decl. ¶ 12; Wisnev Decl. ¶ 19.)

25      Previously, separate state court proceedings had been

26 initiated in 1998 to dissolve Adell's marriage to his former

27 spouse, Rosalyn Willis ("Willis"), and award her spousal support.

28 (Wisnev Decl. ¶ 12.)  Willis submitted a QDRO on September 12,

1  2012, and payments began to her on November 1, 2012. (FAC at 42,
2  Exh. 4 ¶ 37.; Pool Decl. ¶ 14; Wisnev Decl. ¶¶ 14-15.)

3       Williams brought a series of motions in the Divorce
4  Proceedings to obtain a QDRO and/or injunctive relief to prevent
5  the Plan from paying benefits to Adell and/or Willis. [(Wisnev
6  Decl. ¶¶ 10, 23, 28; see also FAC at 3, 42, Exh. 4 ¶ 33; Pool Decl.
7  ¶ 18]. Those applications were denied. (Wisnev Decl. ¶¶ 23, 30;
8  Opp. to Ex Parte App. for TRO, Decl. of Neelam Chandna ["Chandna
9  Decl."] ¶¶ 5-7 & 14.) Most recently, Williams sought emergency
10 relief in the Divorce Proceedings via an "Ex Parte Application for
11 Nunc Pro Tunc Relief or Alternatively to Shorten Time," which
12 sought to enjoin the Plan from paying any other benefits (precisely
13 the relief she later sought from this Court). (Wisnev Decl. ¶¶
14 30-32; Chandna Decl. ¶¶ 5, 14.) The state court first denied
15 Williams' request at a hearing on October 5. (Wisnev Decl. ¶ 30;
16 Chandna Decl. 14.)

17      However, the state court has been considering the propriety of
18 entering a QDRO for the immediate recovery of the child support
19 payments Williams seeks. Toward that end, the court directed
20 Williams to meet and confer with the Plan to draft a QDRO that
21 would entitle her to this relief, consistently with ERISA, and has
22 also appointed an expert to recommend an appropriate QDRO for
23 Williams. (Wisnev Decl. ¶¶ 21-28, 30; Chandna Decl. ¶¶ 5-6, 14].
24 Additionally, the court ordered Williams to notify Willis that
25 Williams was seeking a QDRO. It also suggested that Williams move
26 for the proceedings involving her and Willis to be consolidated so
27 that a single judge could adjudicate their competing claims to
28

1  Adell's pension benefits, but Williams refused to do so. (Wisnev
2  Decl. ¶ 14; Chandna Decl. ¶¶ 7-8.)

3      On the morning of October 30, 2012, the parties appeared in
4  the Divorce Proceedings, at which time the court denied Williams'
5  renewed request for injunctive relief. [Wisnev Decl. ¶ 31; Chandna
6  Decl. ¶ 14]. Instead, the court set a hearing for December 11, 2012
7  to consider the expert's recommendation on a QDRO to enable
8  Williams to recover Plan benefits. (Wisnev Decl. ¶ 31; Chandna
9  Decl. ¶ 14.) On November 15, 2012, Williams filed a notice of
10 appeal of the state court's September 24, 2012, ruling that, inter
11 alia, refused to enter the QDRO Williams sought at that time.

12     On October 5, 2012, the same day that the state court first
13 denied her request for emergency relief (Wisnev Decl. ¶ 30),
14 Williams filed her original complaint in this lawsuit.  Like the
15 applications filed in state court, the Complaint sought to compel
16 the Plan to recognize her child support orders, and asserted four
17 causes of action relating to her efforts to obtain child support
18 payments from the Plan. (Id.) On October 30, immediately after
19 losing a motion for interim relief in the Divorce Proceedings,
20 Williams filed an ex parte application without notice to
21 Defendants, seeking a temporary restraining order (TRO) and
22 preliminary injunction to prevent the Plan from distributing
23 benefits—essentially the same relief the state court denied earlier
24 the same day in the Divorce Proceedings. (Ex Parte App. for TRO;
25 Wisnev Decl. ¶ 31; Chandna Decl. ¶¶ 14-15.) On October 31, this
26 Court granted Williams' request for a TRO and set a preliminary
27 injunction hearing for November 7. (Order Granting Ex Parte App.
28

4

1   for TRO.) At the November 7 hearing, this Court denied Williams'

2   request for a preliminary injunction.

3   **II. LEGAL STANDARD**

4        Under Federal Rule of Civil Procedure 12(b)(6), a complaint is

5   subject to dismissal when the plaintiff's allegations fail to state

6   a claim upon which relief can be granted.  "When determining

7   whether a complaint states a claim, a court must accept as true all

8   allegations of material fact and must construe those facts in the

9   light most favorable to the plaintiff." Resnick v. Hayes, 213 F.3d

10  443, 447 (9th Cir. 2000).

11       In Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009), the Supreme

12  Court explained that a court considering a 12(b)(6) motion should

13  first "identify[] pleadings that, because they are no more than

14  conclusions, are not entitled to the assumption of truth." Id.

15  Next, the court should identify the complaint's "well-pleaded

16  factual allegations, . . . assume their veracity and then determine

17  whether they plausibly give rise to an entitlement to relief."

18  Id.; see also Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th

19  Cir. 2009) ("In sum, for a complaint to survive a motion to

20  dismiss, the non-conclusory factual content, and reasonable

21  inferences from that content, must be plausibly suggestive of a

22  claim entitling the plaintiff to relief") (internal quotation marks

23  omitted).

24  **III. DISCUSSION**

25       **A. Motions to Dismiss and Strike**

26            **i. State Court Proceedings**

27       All Defendants move to dismiss on several grounds pertaining

28  to the concurrent state proceedings, namely, res judicata, the

1  Rooker-Feldman doctrine, and Younger abstention. Defendants Writers

2  Guild of America, West, Inc. and Writers Guild of America, East,

3  Inc. (collectively, "Union Defendants") also move to dismiss on the

4  grounds that the FAC contains no factual allegations with respect

5  to them and does not state the purported basis for their liability.

6  Ms. Williams did not file an opposition to the Motions to Dismiss.

7  She did file a Motion to Strike Defendants' Coordinated Motions to

8  Dismiss ("Motion to Strike"). Because Ms. Williams filed no formal

9  opposition to the Motions to Dismiss, the court construes her

10  Motion to Strike as an opposition so far as it is able.[1]

11      Defendants invoke important doctrines of judicial economy and

12  of federalism.  Res judicata prevents a waste of judicial

13  resources, providing that "when there is a final judgment on the

14  merits, further claims by the parties or their privies based upon

15  the same cause of action are barred." Board of Trustees of

16  Carpenters Pension Trust Fund For Northern California v. Reyes, 688

17  F.2d 671, 673 (9th Cir. 1982).  The Rooker-Feldman doctrine also

18  prevents duplicative judgments so as to protect the jurisdictional

19  authority of state courts. See e.g. Carmona v. Carmona, 603 F.3d

20  1041, 1050 (9th Cir. 2010) (The Rooker-Feldman doctrine "stands for

21  the relatively straightforward principle that federal district

22  courts do not have jurisdiction to hear de facto appeals from state

23

24      [1]  Typically, a motion to strike can be used only to strike
   portions of pleadings.  See Fed. R. Civ. P 12(f) ("Motion to
25  Strike. The court may strike from a pleading an insufficient
   defense or any redundant, immaterial, impertinent, or scandalous
26  matter. The court may act: (1) on its own; or (2) on motion made by
   a party either before responding to the pleading or, if a response
27  is not allowed, within 21 days after being served with the
   pleading.")
28

1  court judgments."). Similarly but separately, the Younger

2  abstention doctrine "forbids federal courts from staying or

3  enjoining pending state court proceedings." AmerisourceBergen

4  Corp. v. Roden, 495 F.3d 1143, 1147 (9th Cir. 2007), quoting

5  Younger v. Harris, 401 U.S. 37, 41 (1971)(internal quotation marks

6  and modifications omitted).

7      Defendants have demonstrated that many if not all of the same

8  questions are at issue in state court, by Plaintiff's own

9  admissions in the Complaint. They point out that all nine causes

10  of action in the FAC relate to Ms. Williams efforts to obtain child

11  support payments from the Plan. "Count I complains about the

12  Plan's response to a subpoena in April 2011, presumably issued with

13  respect to the Divorce Proceedings, seeking information about

14  Adell's benefits [e.g. Comp. ¶ 14]; Count II alleges a 'Wrongful

15  Denial of Benefits for the Plan's failure to pay benefits to

16  satisfy her child support order [e.g. Comp. ¶ 27]; Count III

17  alleges a breach of fiduciary duty based on the Plan's allegedly

18  wrongful denial of benefits [e.g. Comp. ¶ 34]; and Counts IV

19  through IX similarly complain that the Plan 'rejected payment of

20  pension assets for child support' [Comp. ¶ 39]. Elsewhere, Ms.

21  Williams alleges that she is being 'force[d] to relitigate matters

22  previously adjudicated by the Los Angeles Superior Court.' [Comp. ¶

23  41]." (Plan Mot. at 7.)

24      Ms. Williams did not directly address the substance of

25  Defendants' Motions to Dismiss regarding the ongoing state

26  proceedings. She stated only that at the hearing on the

27  preliminary injunction, Defendants misled the court "to believe

28  that all was being taken care of in State Court." (Williams Mot.

7

at 12.)  Ms. Williams copied eight pages of transcript from state court proceedings with no commentary, apparently to inform this court of the deficiencies in state court proceedings.  Without any direction from Ms. Williams, however, it is impossible for this court to discern what the state court is or is not addressing in this complex, long-running divorce and child support case based solely on a portion of the transcript of one hearing.  Because Ms. Williams has apparently not challenged any of the overlap, the court has no choice but to find that Ms. Williams concedes these points to Defendants.[2]

### ii. Union Defendants' Grounds to Dismiss

Likewise, Ms. Williams did not challenge the Union Defendants' claim that the FAC makes no factual allegations against them.  The court finds that the FAC apparently does not make any such allegations beyond mentioning them in the caption.  Combined with Ms. Williams lack of opposition on this point, the court finds for the Union Defendants on this point as well.

### iii. Ms. Williams' Grounds of OPposition

Through her Motion to Strike, Ms. Williams appears to oppose the Motions to Dismiss based on Defendants' failure to have a conference prior to the filing of the Motions, as required by local rules.  Local Rule 7-3 provides that "In all cases not listed as exempt in L.R. 16-12, . . . counsel contemplating the filing of any

---

[2]Defendants have not shown conclusively that there is a total overlap between all the issues, nor have they separated out which issues have been subject to final judgment and which are still pending. However, because Ms. Williams has failed to oppose any of these grounds, the court must assume that she concedes that all issues have either already been adjudicated or are pending before state court.

motion shall first contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution." Defendants argue that they were not obligated to confer with Plaintiff because she is pro se and falls in the exemption under L.R. 16-12. This appears to be incorrect.[3] Local Rule 16-12 exempts conferences only where pro se litigants are in custody ("(c) Any case in which the plaintiff is appearing *pro se,* is in custody, and is not an attorney"). Nonetheless, the court does not find this without more to be a reason to deny the Motions to Dismiss. The court expects strict compliance with all federal and local rules but finds that Ms. Williams has not alleged that she was not prejudiced by the lack of conference. Additionally, Ms. Williams herself appears not to have complied with this rule in filing her Motion to Strike. (<u>See</u> Plan Opp. to Mot. to Strike at 2 n.2.)

Ms. Williams' final argument that could be construed as an opposition to the motion to dismiss is that Defendants "direct[ed] Plaintiff to request injunctive relief in Federal Court." (Williams Reply at 8.) This appears, however, to have been based on a misunderstanding. Defendants indicate that "the Plan explained that the state court lacked jurisdiction to enter

---

[3]This notwithstanding Judge Wright's Order in <u>Spencer v. U.S.</u> <u>Office of Personnel Management</u>, 2012 WL 1865500 *3 (C.D.Cal. 2012), which does not mention the "in custody" requirement ("Local Rule 7-3 provides that "[i]n all cases not listed as exempt in L.R. 16-12, ... counsel FN2 contemplating the filing of any motion shall first contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution." Local Rule 16-12(c), however, exempts "[a]ny case in which the plaintiff is appearing pro se." Therefore, Plaintiff's failure to meet and confer prior to filing his Motion for Summary Judgment is not grounds for denial of Plaintiff's Motion.")

'restraining orders or injunctions' against the Plan - not that
[the state court] lacked jurisdiction to enter qualified domestic
relations orders to adjudicate Williams' claim for benefits."
(Producer-Writers Guild Mot. at 5 n.3.) The problem is not that
this court lacks jurisdiction to hear the case but rather that the
same case is being heard in state court.

**B. Motion to Disqualify Counsel**

Ms. Williams also moves to disqualify opposing counsel
(apparently including Neelam Chandna, J. David Sackman, the law
firm of Reich, Adell & Cvitan, Jeremy M. Mittman, Kara L. Lincoln,
Myron D. Rumeld, and the law firm of Proskauer Rose, LLP) on the
ground of a conflict of interest.  (Mot. to Strike at 3-5.)  She
argues that the Writers Guild of America owes duties to its
members, whereas the Producer-Writers Guild of America Pension Plan
owes duties to both Plan participants and their beneficiaries.
"The problem is that the Plan Directors . . . consist of 'Employer
Directors and Union Directors collectively,' all of which are
parties to the 'collective bargaining agreement,' whose primary
responsibilities are to Writers Guild or 'Union' members, not their
families." (Williams Reply at 4.)  "Counsel now claiming
concurrent representation of both the Guilds and the Plan, have and
continue to operate under substantial conflict of interest in
attempting to represent the Guilds' interests and incentives <u>and</u>
the Plan's interests as fiduciaries owing the duty of disclosure
and preservation of pension benefits for Alternate Payees pursuant
to domestic relations orders. . . . Clearly, the interests of the
Guilds are divergent to those of the Plan.  Counsel's attempt to
juggle the interests of both the funding source of the pension plan

10

1 and the Plan's duties and responsibilities as fiduciaries,

2 constitutes a glaring conflict of interest." (Williams Reply at 4-

3 5.)

4     Ms. Williams appears to be saying that Defendants have

5 conflicting interests and that the Plan, in particular, should be

6 representing her interests, rather than opposing them.  By this

7 logic, however, it seems that there could be no case in which a

8 Plan beneficiary and a Plan were on opposing sides.  The court

9 recognizes that Ms. Williams feels that the Plan is working against

10 her when it should be assisting her, but the court does not see any

11 grounds on which to disqualify Defendants' counsel.

12     **C. Motion for Reconsideration**

13     The court has already rejected a preliminary injunction and

14 one motion for reconsideration, and Ms. Williams now presents no

15 previously unavailable facts or law.  The court once again declines

16 to reconsider the Order Denying a Preliminary Injunction.

17 **IV. CONCLUSION**

18     The court sympathizes with Ms. Williams in her long struggle

19 to obtain her child support payments.  However, on the basis of the

20 parties' submissions, the court must find that the state court

21 proceedings concern the same issues as those raised by Ms. Williams

22 in this court, that there is no basis to disqualify Defendants'

23 counsel, and that there is no basis on which to reconsider the

24 denial of a preliminary injunction.  The court therefore GRANTS

25

26 ///

27 ///

28 ///

11

Defendants' Motions to Dismiss and DENIES Plaintiff's Motions.

IT IS SO ORDERED.


Dated:   February 13, 2013

DEAN D. PREGERSON
United States District Judge